THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE DOUGLAS, Defendant-Appellant.

First District (3rd Division)   No. 1—87—0418

Opinion filed January 9, 1991.

Randolph N. Stone, Public Defender, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago, for the People.

JUSTICE FREEMAN[1] delivered the opinion of the court:

Defendant, George Douglas, was indicted for the armed robbery and murder of Robert Burrell on November 29, 1984. After a jury trial in the circuit court of Cook County, defendant was convicted of both offenses. The trial court sentenced defendant to consecutive sentences of 40 and 20 years' imprisonment for the murder and armed robbery, respectively. Defendant appeals the murder conviction and consecutive sentences.

The testimony of the State's occurrence witnesses, Robert King and LaTanya Livingston,[2] revealed that, on November 29, 1984, defendant discussed with them a plan to rob a taxicab driver. Pursuant to the plan, later that day, Livingston took a cab driven by Robert Burrell to a specified address while defendant and King proceeded to the address separately. Defendant and King arrived at the address after the taxicab. Once there, defendant entered the cab through the rear passenger door, put a gun in Burrell's back and announced a robbery. King, for his part, reached through the driver's window, turned off the ignition and put a screwdriver to Burrell's throat. When the pair asked Burrell for his money, he told them he did not have any. Burrell then forced his way out of the cab past King and started running away. Defendant shot Burrell in the back as he ran down the street.

Defendant presented no witnesses of his own. However, through cross-examination of the State's witnesses, he did counter the State's evidence that he had shot Burrell with evidence that it was King who had shot Burrell.

In his closing argument, defense counsel asked the jury to exercise its powers of lenity and find defendant guilty only of armed robbery. Defense counsel based this request on the evidence that King, rather than defendant, actually shot Burrell and on the unfairness to defendant of convicting him of murder while the State allowed King to plead guilty only to armed robbery and to receive only a sentence of 15 years.

After the jury began its deliberations, it sent a total of six notes to the trial court. The first note asked the court whether defendant's conviction was dependent upon the facts presented or the law presented and its definition of murder. The second note asked the court

---

[1]Justice Freeman authored this opinion prior to his election to the Illinois Supreme Court.

[2]King and Livingston pled guilty to armed robbery and agreed to testify at defendant's trial.

whether it was able to respond to the first. In response to these two notes, the trial court reiterated to the jury the third paragraph of Illinois Pattern Jury Instructions, Criminal, No. 1.01 (2d ed. 1981) (IPI Criminal 2d No. 1.01), which instructs the jury that its duty is to determine the facts only from evidence and that it is to decide the case by applying the law to the facts.

The third note informed the court that the jury was unable to reach a verdict on one of the charges and asked the court what it should do "at this point." In light of the fact that the jury had deliberated less than five hours, the trial court decided that the appropriate response would be to instruct the jury to continue its deliberations. The jury's fourth note asked the trial court whether, if it reached a decision on the offense of murder, it would be "saying" that defendant was the person who actually pulled the trigger. The court determined that the proper response to the note would be to instruct the jury to read the instructions. The fifth note informed the court that the jury had reached a deadlock. The trial court determined that the appropriate response to this note was to require the jury to deliberate further. Due to the late hour, the trial court decided to send the jury to a hotel and have it continue deliberating the following day.

Upon reconvening the jury at that time, the trial court asked whether it was deadlocked. The jury, apparently in unison, informed the court that it was. Immediately thereafter, one juror informed the court that the jury was confused by the instructions. Based thereon, the trial court instructed the jury to submit a question to it regarding its confusion about the instructions, which the court would endeavor to answer. Pursuant to this instruction, the jury sent out its last note to the trial court. The note asked whether, if the jury found defendant guilty of the murder charge, it would be saying that the evidence showed that defendant actually pulled the trigger. The trial court answered that such a verdict, if the jury was satisfied beyond a reasonable doubt of the proof of the necessary elements, would state no conclusion on the issue whether defendant actually pulled the trigger. The jury rendered its verdict after receiving this answer.

OPINION

On appeal, defendant first contends that the trial court negated the jury's power of lenity and denied him the effective assistance of counsel by reiterating the third paragraph of IPI Criminal 2d No. 1.01 in response to the jury's first two notes.

With respect to the lenity argument, defendant asserts that in

view of the trial court's reiteration of IPI Criminal 2d No. 1.01, the jury "had to" find defendant guilty of murder no matter how inequitable they thought that verdict if they found that the facts established the elements of murder. Attempting to circumvent the case law holding that defendants do not have the right to instructions informing a jury of its power of lenity (see, *e.g.*, *United States v. Anderson* (7th Cir. 1983), 716 F.2d 446; *United States v. Dellinger* (7th Cir. 1972), 472 F.2d 340, *cert. denied* (1973), 410 U.S. 970, 35 L. Ed. 2d 706, 93 S. Ct. 1443; *United States v. Dougherty* (D.C. Cir. 1972), 473 F.2d 1113), defendant argues that where, as here, there is both a sound legal basis for conviction and an equally sound equitable basis for acquittal, juries should be made aware of the options available to them so that they can make an informed decision. As such, defendant concludes that the trial court's responses to the jury's questions regarding its power of lenity improperly negated that power.

We disagree. We find *United States v. Dougherty* (D.C. Cir. 1972), 473 F.2d 1113, dispositive of this issue. Therein, the defendants argued that the trial court had erred in refusing to instruct the jury of its right to acquit the defendants without regard to the law and the evidence and in barring defendants from arguing that issue to the jury. As the parties note, the Court of Appeals rejected this argument. However, it is another aspect of *Dougherty*, which the parties have overlooked, which we find dispositive of defendant's instant contention, particularly in view of defendant's failure to cite any case law in support of his argument.

In *Dougherty*, the trial court instructed the jury, insofar as relevant here, "If you find that the Government has proven beyond a reasonable doubt that one or more of the defendants committed each of the elements comprising the crimes [charged], then I must instruct you further that the law does not recognize as a defense to *** these charges that the defendants were motivated to commit their acts by sincere political, religious or moral convictions or in obedience to some higher law." (*Dougherty*, 473 F.2d at 1138 n.54.) The *Dougherty* defendants argued, similarly to defendant here, that this instruction was coercive, tantamount to a directed verdict of guilty and outside the proper scope of judicial instruction. In rejecting this argument, the court stated:

> "[D]efendants' real complaint seems to be that the court stated the law applicable to the facts. There is no contention—apart from the jury nullification claim, which we have rejected—that the charge was inaccurate as a statement of the applicable law. If a judge is to instruct the jury on the ultimate

facts that are material under the law, he may properly advise the jury of what matters brought forward by defendants are not material under the applicable rule of law—as surely as he may charge that voluntary intoxication is no defense to a charge of second degree murder. Since it is the essence of the judicial function to declare the applicable law, \*\*\* the mere declaration of the law cannot be held outside the judicial function. This is tautological, but it is often the part of wisdom to be able to recognize which propositions are true tautologies. The jury were not told that they must bring in a guilty verdict nor was there the kind of language or conduct, going beyond a declaration of the applicable law, that has in other cases been held coercive, and an improper departure from the role of the judge." *Dougherty*, 473 F.2d at 1138.

■ Similarly to the *Dougherty* court, we find that, in view of the fact that a defendant is not entitled, as a matter of right, to an instruction advising the jury of its power of lenity or nullification, the mere reiteration, in response to a query from the jury implicating that power, of an instruction declaring that it is to decide the case by applying the law to the facts as determined from the evidence is not outside the proper scope of the judicial function. In other words, given the absence of a right to have a jury instructed on its power of lenity or nullification, a mere declaration of the law which is applicable to, and according to which a jury must decide, a case is not reversible error.[3]

■ Likewise, we do not believe that the trial court's response to the jury's first two inquiries denied defendant the effective assistance of counsel. The only case cited by defendant in support, *People v. Chandler* (1989), 129 Ill. 2d 233, 543 N.E.2d 1290, is clearly distinguishable from this case. In fact, it is so different from this case that we find defendant's reliance thereon, as support for the proposition that the *trial court's* actions denied him his sixth amendment rights, somewhat perplexing. In *Chandler*, the supreme court found that a defendant's counsel was ineffective because he did not understand the law of accountability or felony murder, as revealed by his argument to the jury that the defendant should not be convicted of murder, although he had broken into the victim's home, because he had not in-

---

[3]This conclusion also disposes of defendant's further contention that the trial court erred by not informing the jury, in response to the first two notes, that it could ignore the law and the legal definition of murder and, instead, focus on the evidence regarding defendant's disparate treatment *vis-a-vis* Robert King.

flicted the fatal wounds upon the victim. In addition, the court also relied, as revealing counsel's ineffectiveness, upon his failure to cross-examine several key prosecution witnesses, upon his cursory cross-examination of other prosecution witnesses and upon his failure to call any defense witnesses, including the defendant, although he had told the jury in opening statement that the defendant would testify. The court concluded that defense counsel had thus not subjected the State's case to meaningful adversarial testing and that defendant was denied a fair trial. *Chandler*, 129 Ill. 2d at 246-49.

*Chandler* is of no assistance to defendant here. In that case there was no allegation of any action by the trial court which denied the assistance of counsel, as in this case. We simply cannot see how *Chandler* supports a conclusion that the trial court here denied defendant the effective assistance of counsel by reiterating IPI Criminal 2d No. 1.01 in response to the first two inquiries from the jury. That, in fact, may have been the case. However, to convince us of that fact, defendant is required to cite some case law or other authority *on point* in support.

Defendant next contends that if we find his trial counsel's lenity argument improper, we must then find his counsel's performance ineffective because the record fails to reflect that defendant consented to his counsel's concession of guilt in closing argument to the jury. We cannot agree.

In support of the instant argument, defendant relies principally upon *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, *cert. denied* (1986), 478 U.S. 1013, 92 L. Ed. 2d 727, 106 S. Ct. 3314. In *Hattery*, the supreme court found the defendant's counsel ineffective where he conceded the defendant's guilt of the murder charged and his eligibility for the death penalty; presented no evidence or theory of defense; made no closing argument; made no attempt to hold the State to its burden of proof; and merely attempted to show that the defendant acted out of compulsion, which is a mitigating factor sufficient to preclude imposition of the death penalty. In holding such assistance ineffective, the court relied on case law where ineffectiveness was presumed because defense counsel's theory contradicted the defendant's position at trial. One of the court's goals in relying upon those cases was to prevent counsel from undermining the defense preferred by the client by conceding guilt. To promote that goal, the court strongly condemned the practice of conceding guilt after the entry of a not-guilty plea unless the defendant's consent to that concession appeared on the record. *Hattery*, 109 Ill. 2d at 462-65.

▉ Contrary to defendant's implication, *Hattery* did not establish

a *per se* rule of ineffectiveness of counsel whenever counsel concedes a defendant's guilt and the record fails to reveal the defendant's consent, if there is overwhelming evidence of guilt. (*People v. Chandler* (1989), 129 Ill. 2d 233, 543 N.E.2d 1290; *People v. Johnson* (1989), 128 Ill. 2d 253, 538 N.E.2d 1118.) Rather, in such cases, "ineffectiveness may be established; however, the defendant faces a high burden" before he can avoid the two-part test of ineffectiveness established in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. (*Johnson*, 128 Ill. 2d at 269-70.) That two-part test is: (1) whether counsel made errors so serious and whether his performance was so deficient that he was not functioning as the counsel guaranteed by the sixth amendment; and (2) whether those deficiencies so prejudiced the defendant that he was deprived of a fair trial, a trial whose result is reliable. *Johnson*, 128 Ill. 2d at 265-66.

Like the *Johnson* court, we do not believe that defendant's counsel here entirely failed to subject the State's case to meaningful adversarial testing such that this case falls within the facts of *Hattery* or such that the standard of *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (for avoiding the two-part *Strickland* test), is met here. To reach this conclusion, we need look no further than defendant's arguments in support of his contention that the trial court's answers to the jury's first two questions denied him effective assistance of counsel. In so contending, defendant conceded that "[i]n the instant case, trial counsel was an astute and zealous advocate for his client. He vigorously cross-examined all of the State's witnesses and demonstrated a thorough understanding of the law of accountability. *** [He] did everything that the *Chandler* majority required. He subjected the State's case to adversarial testing and presented the jury with arguments sufficient to justify acquittal."

In view of these concessions on appeal by defendant, the fact that the record fails to reveal his consent to trial counsel's concession of guilt in closing argument to the jury is, alone, insufficient to justify a reversal of his conviction on the basis of *Hattery*. In this regard, we note, like the *Johnson* court, that this case does not fall within any of the holdings of the cases relied upon in *Hattery*, in which the theory of defense counsel was contradicted by the defendant's actions.[4] *Johnson*, 128 Ill. 2d at 270-71.

Defendant next contends that the trial court's responses to the six

---

[4]As defendant offers no argument in an attempt to satisfy the two-part *Strickland* test, we need not pass on whether that test is satisfied here and is thus a separate ground upon which to reverse his conviction.

notes sent it by the jury had the cumulative effect of coercing the jury into finding defendant guilty of murder. Specifically, defendant asserts that the trial court further erred[5] by failing to instruct the jury pursuant to *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731, after the jury informed the court that it had reached a deadlock.[6] We cannot agree.

■ Contrary to defendant's implication, *Prim* did not establish a *per se* rule that a trial court is to give a jury the instruction approved therein immediately upon being informed by the jury that it is deadlocked. Rather, the time when a supplemental instruction should be given is for the trial court to decide. It is primarily the function of the trial court to determine, on the basis of such factors as the length of time already spent in deliberation and the complexity of the issues, when a supplemental instruction is appropriate. The court has discretion to have the jury continue its deliberation even though it has reported that it is deadlocked and unable to reach a verdict. *People v. Cowan* (1985), 105 Ill. 2d 324, 328, 473 N.E.2d 1307.

In *Cowan*, the jury informed the court that it was deadlocked about four hours after it began deliberating, again three hours later, after the trial court simply allowed it to continue deliberating, and again 45 minutes after it began deliberating the next morning. The court found no abuse of discretion in allowing the jury to deliberate for eight hours before intervening to give the *Prim* instruction. In so holding, the court noted that there had been a five-day trial of nine charges; the jury had to weigh the testimony of 11 witnesses, includ-

---

[5]We have already found the first argument related to this contention without merit. See note 1.

[6]The instruction approved in *Prim* for deadlocked juries reads:

"The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case." *Prim*, 53 Ill. 2d at 75-76.

ing the defendant, who placed his credibility in issue by directly contradicting the testimony of the State's main witness; a note sent out by the jury indicated that, although unlikely, there was some hope of agreement; the jury was sequestered for the night, and after deliberating for 45 minutes, sent its third note to the trial court indicating deadlock. *Cowan*, 105 Ill. 2d at 328-29.

Comparably to *Cowan*, the jury here first reported that it was deadlocked after less than five hours of deliberation, again reported that it was deadlocked after deliberating for approximately four more hours, or a total of nine hours, and was then sequestered until the next day. Upon reconvening then, the trial court inquired of the jury whether it was deadlocked. After the jury, apparently in unison, informed the court that it was, one juror informed the court that the jury was confused by the instructions. Based thereon, the trial court instructed the jury to submit a question to it regarding its confusion. After the court answered the question, the jury returned with a verdict of guilty of murder. The record does not reveal the length of time it took the jury to return with a guilty verdict after the court answered this question.

■ Given the facts of this case, we find, similarly to the finding in *Cowan*, that the trial court did not abuse its discretion in declining to give the *Prim* instruction after either five or nine hours of jury deliberations. As in *Cowan*, a *Prim* instruction might have been appropriate after the jury informed the court on the second day of deliberation that it was still deadlocked. However, in view of the jury's expression of confusion regarding the instructions, we do not believe the trial court abused its discretion in choosing, instead, to attempt to eliminate that confusion by the use of a different instruction. Similarly to the second note sent out to the court in *Cowan*, the jury's indication here that it might simply be confused about the instructions gave the court reason to believe that there was some possibility of agreement if that confusion were eliminated.

With regard to the jury's last question, regarding the law of accountability, defendant contends that the trial court coerced the jury to convict him of murder by directly answering that question but refusing to answer the first question, regarding the jury's power of lenity and failing to give the *Prim* instruction. We cannot agree.

■ The trial court's answer to the jury's last question was a correct statement of the law and thus entirely proper. In view of the fact that defendant was not entitled to an instruction to the jury concerning its power of lenity and that the failure to give a *Prim* instruction was not an abuse of discretion, the trial court's response to the last

inquiry posed by the jury did not, alone, coerce the jury to convict defendant of murder and thus deny him a fair trial.

Lastly, defendant contends that the trial court abused its discretion in sentencing him to consecutive sentences on the murder and armed robbery convictions totalling 60 years. Specifically, he asserts that his sentences were excessive in light of the evidence revealing that he and Robert King were similarly situated in terms of their criminal histories and responsibility for the armed robbery and murder of Robert Burrell. In addition, he asserts that the facts did not reveal, nor did the trial court find, that consecutive sentences were necessary to protect the public.[7]

Preliminarily, we note that defendant has waived this issue by failing to raise it below. (*People v. Hicks* (1984), 101 Ill. 2d 366, 374, 462 N.E.2d 473.) Even were that not the case, we would find no error in the imposition of consecutive sentences.

Even assuming that defendant and Robert King were similarly situated in terms of their criminal histories and responsibility for the death of Robert Burrell, defendant's argument that his sentences, when compared to King's, are excessive ignores the significant fact that, unlike King, he was convicted of murder *and* armed robbery. That being the case, we simply fail to see how defendant's sentences for both convictions can be compared to King's single sentence for conviction of the lesser offense supported by the facts. To hold that defendant's sentences for both the offenses of armed robbery and murder should be reduced to an approximation of the sentence imposed upon King for the lesser offense of armed robbery would simply and improperly ignore defendant's additional conviction for murder. Defendant's argument, carried to its extreme, would allow a defendant convicted of a crime committed with another person, who escaped arrest, to argue that no sentence should be imposed upon him for that reason. The illogic of such an argument is manifest.

Likewise, we do not find the imposition of consecutive sentences upon defendant assailable either because the facts did not reveal that such sentences were necessary to protect the public or because the trial court did not so explicitly find, as provided for under the Unified Code of Corrections. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(b).

---

[7]Section 5—8—4(b) of the Unified Code of Corrections prohibits a trial court from imposing consecutive sentences "unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(b).

■ As defendant intimates, the imposition of consecutive sentences does not, in and of itself, imply that the sentencing court believed that such sentences were necessary to protect the public. On the other hand, notwithstanding the legislature's use of the word "shall" in section 5—8—4, a trial court is not required to recite the language of the statute in determining sentence. " 'What is required is that the record show that the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public.' " *Hicks*, 101 Ill. 2d at 374-75, quoting *People v. Pittman* (1982), 93 Ill. 2d 169, 178.

In imposing sentence, the trial court, as defendant asserts, failed to explicitly find that consecutive sentences were necessary to protect the public. That failure notwithstanding, we find that the record adequately reveals that the trial court believed that such sentences were necessary to protect the public.

In sentencing defendant, the trial court stated:

"It seems to me that the facts here, and the circumstances, and Mr. Douglas's background clearly distinguish him from his accomplices, indeed it is because of his background alone, and the gravity of this offense that a sentence of more than fifteen years *** for the offense of Armed Robbery is appropriate. It seems to me that a maximum sentence for the offense of murder is the appropriate sentence in this case, with a consecutive sentence for the offense of Armed Robbery."

■ The foregoing reasons of the trial court for the length of sentences imposed and their consecutiveness met the requirements of section 5—8—4. Specifically, we find that, in referring to the "facts" and "circumstances" and the "gravity" of the offense, the court clearly considered the "nature and circumstances of the offense" as required under section 5—8—4. Additionally, we find that, in referring to defendant's "background," the court was clearly referring to his prior criminal history, which included convictions for auto theft, armed robbery, robbery, unlawful use of a weapon and bail jumping. The court thus considered the "history and character" of defendant, as it was also required to do under section 5—8—4. While the court mentioned the facts and circumstances and gravity of the offense and defendant's background in justifying a sentence for the armed robbery conviction of more than 15 years, we believe it would be illogical to conclude that the court did not consider those factors in also imposing consecutive sentences. We are sufficiently convinced that it did.

■ Finally, we do not believe that the consecutive sentences are assailable for the additional reason, offered by defendant, that the

facts of the case do not support such sentences. In so concluding, we note that it is the facts and circumstances of a case *and* a defendant's history and character which a court is required to consider in determining to impose consecutive sentences. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4.) As such, that the facts, alone, may not warrant such sentences is unavailing to defendant.

For all of the foregoing reasons, we affirm defendant's conviction and sentences.

Affirmed.

CERDA, P.J., and RIZZI, J., concur.