NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190812-U

NOS. 4-19-0812, 4-19-0813 cons.

FILED
September 15, 2021
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| BRUCE Z. THOMAS, | ) | Nos. 19CF57 |
| Defendant-Appellant. | ) | 19CF58 |
| | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding the trial court did not abuse its discretion
(1) by sentencing defendant to an aggregate prison term of 24 years and (2) in
ordering defendant to serve consecutive sentences.

¶ 2            In September 2019, defendant, Bruce Z. Thomas, pleaded guilty to the following:

(1) one count of unlawful delivery of a controlled substance in Woodford County case No.

19-CF-56 (hereinafter case No. 19-CF-56), (2) one count of unlawful delivery of a controlled

substance in Woodford County case No. 19-CF-57 (hereinafter case No. 19-CF-57), and (3) one

count of unlawful delivery of a controlled substance in Woodford County case No. 19-CF-58

(hereinafter case No. 19-CF-58). The State later dismissed case No. 19-CF-56. After an October

2019 sentencing hearing, the trial court sentenced defendant to a 12-year prison term in case No.

19-CF-57 to run consecutive to a 12-year sentence in case No. 19-CF-58. Defendant filed a motion to reconsider his sentences in both cases, which the court denied following a November 2019 hearing.

¶ 3 Defendant appeals, arguing the trial court abused its discretion (1) in ordering him to serve consecutive sentences and (2) by imposing an aggregate sentence of 24 years in prison. We affirm.

¶ 4 I. BACKGROUND

¶ 5 A. Defendant's Guilty Plea

¶ 6 In May 2019, a grand jury indicted defendant with (1) one count of unlawful delivery of a controlled substance (720 ILCS 570/401(c)(1) (West 2018)) in case No. 19-CF-56, (2) one count of unlawful delivery of a controlled substance (*id.*) in case No. 19-CF-57, and (3) one count of unlawful delivery of a controlled substance (*id.*) in case No. 19-CF-58.

¶ 7 In September 2019, defendant entered an open plea to the alleged offenses in case Nos. 19-CF-56, 19-CF-57, and 19-CF-58. Because the parties made no agreement as to sentence, the trial court admonished defendant he could be sentenced "from 4 years to 15 years in the Illinois Department of Corrections [(DOC)]," in each case, and "could be sentenced *** to consecutive sentencing." Defendant acknowledged he understood, and the court admonished him regarding his trial rights, which he waived.

¶ 8 The trial court then heard the following factual basis for defendant's guilty plea:

"Through an investigation contact was made with this defendant *** by Ricardo Mancha. He is one of the agents for the Peoria MEG agency. On February 22nd, 2019, an arranged purchase of heroin was made where Ricardo Mancha was acting in an uncover [*sic*] capacity here in Woodford County. The

defendant provided 1.06 grams of a substance that was later confirmed to be heroin to Ricardo Mancha. *** And that was for an exchange of funds from the MEG unit.

On 2019-CF-57 Ricardo Mancha made contact with [defendant], who sold to Ricardo Mancha 1.89 grams of heroin. And that was in Woodford County, Illinois. Again, that was using official advanced funds, money, for the purchase of those—of that heroin.

And then again on March 27th, 2019, the defendant *** was contacted by Ricardo Mancha, and the defendant said he would sell heroin again to Ricardo Mancha. And that happened here in Woodford County, Illinois, and that amount was 1.90 grams of heroin."

¶ 9 On October 4, 2019, defendant filed a motion to withdraw his guilty plea, asserting the State provided an insufficient factual basis to the trial court, "in that it was unknown as to when the Defendant *** sold heroin to Ricardo Mancha," in case No. 19-CF-57. Defendant further alleged the court failed to admonish him of "the minimum or maximum sentence for which he could be sentenced to for his three pleas of guilty for delivery of a controlled substance." At the hearing on defendant's motion, the State indicated that, upon receiving the completed lab reports, the heroin recovered in case No. 19-CF-56 weighed "just under 1 gram," and voluntarily dismissed the case. Ultimately, the court denied defendant's motion with respect to case Nos. 19-CF-57 and 19-CF-58.

¶ 10 B. Sentencing Hearing

¶ 11 1. *The Presentence Investigation Report*

¶ 12        On October 31, 2019, the matter proceeded to sentencing. A presentence investigation report (PSI) indicated defendant had three children, two of whom were minors. Defendant was 44 years old and reported using two grams of heroin daily. Though unemployed due to incarceration at the time of sentencing, defendant reported that "he was employed part-time at the time of the offense."

¶ 13        The PSI detailed the following criminal history: a conviction in 1998 for manufacture and delivery of cannabis, two convictions in 2009 for unlawful possession of a controlled substance, a conviction in 2009 for unlawful possession with intent to deliver a controlled substance, a conviction in 2009 for unlawful delivery of heroin, and a conviction in 2015 for unlawful possession of a controlled substance. Further, defendant had one unrelated felony case pending against him (Peoria County case No. 19-CF-414) for unlawful possession of a controlled substance. Defendant also had numerous traffic offenses, including two convictions for driving with a suspended license in 2014 and 2018. Finally, the PSI indicated defendant had received six terms of court supervision, three of which "were revoked and a conviction was entered." Defendant also previously received six terms of probation, four of which were revoked.

¶ 14                        2. *Evidence in Aggravation*

¶ 15        In aggravation, the State called Albert Holocker, a case agent with the Peoria Multi-County Narcotics Group (P-MEG). Holocker testified he observed three controlled purchases involving defendant in the Dollar General parking lot "at 1100 Spring Bay Road, East Peoria," on February 22, March 6, and March 27, 2019. Holocker explained defendant "would pull into the parking lot, Agent Mancha would exit the undercover vehicle, get into [defendant's] vehicle where the transaction would take place." During each controlled purchase, "[t]here were no differences. Same scenario played out." According to Holocker, defendant sold Mancha 0.7

- 4 -

grams of heroin for $150 on February 22, 2019. On March 6, 2019, defendant sold Mancha 1.89 grams of heroin for $300. Holocker further testified defendant sold Mancha "1.9 grams [of heroin] with packaging" for $300 on March 27, 2019.

¶ 16　　　　Holocker also testified he assisted Agent Mancha in conducting a controlled purchase "at the McDonald's on Prospect and War Drive," in Peoria, Illinois, where defendant sold Mancha 0.53 grams of heroin for $200, "a week or so before *** February 22nd." Similar to the controlled buys carried out at the Dollar General, Holocker explained defendant "would pull into the parking lot, Agent Mancha would exit the undercover vehicle, get into [defendant's] vehicle where he would purchase narcotics."

¶ 17　　　　　　　　　　　3. *Evidence in Mitigation*

¶ 18　　　　Following the State's evidence in aggravation, defense counsel presented the testimony of Vonnie Thomas, defendant's mother. Thomas testified she became aware of defendant's drug addiction when defendant "was about 16 or 17," although she "didn't know what type of drug." Thomas further testified defendant's father attempted to assist defendant in addressing his drug addiction but "couldn't get him to go anywhere."

¶ 19　　　　Defendant testified on his own behalf and acknowledged being addicted to heroin for "about 10 years." During that time, defendant testified he sought drug treatment "[f]our or five times," and had two successful years of sobriety in 2011 and 2012. Defendant also "[t]ried self-medicating," and purchased Suboxone, a brand-name prescription drug containing buprenorphine and naloxone, which is used to treat opioid addiction. However, he began using heroin again following the death of his father. On cross-examination, defendant acknowledged his criminal history and testified he had been selling heroin since 2009, "about two or three times a week," to support his addiction.

¶ 20                                    4. *Imposition of Sentence*

¶ 21            In closing arguments, the State requested a sentence of 12 years' imprisonment in

case No. 19-CF-57 to run consecutively to a 14-year sentence in case No. 19-CF-58. Defense

counsel asked that the trial court "treat [defendant] as a drug addict more so than a drug dealer,"

and requested "a much lower sentence *** that would allow for some remedial response on

[defendant's] part if he is willing to take it."

¶ 22            Before pronouncing sentence, the trial court stated it considered (1) the factual

basis at the time of defendant's guilty plea, (2) the PSI, (3) the financial impact of a sentence to

DOC, (4) the evidence and arguments offered in aggravation, mitigation, and with respect to

sentencing alternatives, and (5) defendant's testimony.

¶ 23            The trial court found no factors in mitigation. As to factors in aggravation, the

court considered defendant's criminal history to be a "significant factor," and determined a

sentence was necessary to deter others. The court also considered the distribution of heroin to be

"a threat to the well-being of others as well." The court noted defendant was ordered into drug

evaluation and treatment "six prior times," and served two prior sentences in DOC, "both dealing

with heroin." The court further noted defendant had "numerous revocations of *** various terms

of probation."

¶ 24            The court then considered section 5-8-4 of the Unified Code of Corrections

(Unified Code) (730 ILCS 5/5-8-4(c)(1) (West 2018)) and determined the felony sentences

should be served consecutively. In making that determination, the court stated, "These are

delivery charges. They are not mere possession charges." The court further stated:

              "And it makes it exceptionally difficult for the court to accept at this

              juncture after all of the efforts that have been poured over the defendant over such

a lengthy period of time that all of a sudden he has seen the light and *** this time treatment is going to take and he's going to lead a law-abiding life.

***

[Defendant], I don't think you're likely to refrain from distributing heroin. I think you have a long and lengthy criminal history dealing with the distribution of substances that goes back to 1998. And society needs to be protected from the decisions you've made and I suspect you are going to make in the future."

¶ 25 Ultimately, the trial court imposed two consecutive sentences of 12 years' imprisonment in case Nos. 19-CF-57 and 19-CF-58. In doing so, the court reiterated that, "in regard to the nature and circumstances of these offenses and the history and character of the defendant that consecutive sentences are, in fact, necessary to protect the public from [defendant's] criminal conduct."

¶ 26 C. Defendant's Motion to Reconsider

¶ 27 On November 15, 2019, defendant filed a motion to reconsider his sentence. In support of the motion, defendant argued, in relevant part, that his aggregate 24-year sentence was excessive and the "[c]onsecutive sentences herein have no basis under the law other than to lock-up drug addicts in our society." Following a hearing that same day, the trial court denied defendant's motion. In doing so, the court found defendant's motion was "absolutely categorically wrong when it says that I ignored anything," and the court further stated that it "did not ignore any of [defendant's] statements or any of the evidence presented."

¶ 28 This appeal followed.

¶ 29 II. ANALYSIS

¶ 30　　　　　　　On appeal, defendant argues the trial court abused its discretion (1) in ordering him to serve consecutive sentences and (2) by imposing an aggregate sentence of 24 years in prison.

¶ 31　　　　　　　　　　　　　　A. Consecutive Sentences

¶ 32　　　　　　　Section 5-8-4(a) of the Unified Code provides, in pertinent part, that when a court imposes a prison sentence on a defendant who is already subject to a sentence of imprisonment, such sentence shall run concurrently "unless otherwise determined" by the court. 730 ILCS 5/5-8-4(a) (West 2018). Accordingly, a court may impose a consecutive sentence if, "having regard to the nature and circumstances of the offense and the history and character of the defendant, it is the opinion of the court that consecutive sentences are required to protect the public from further criminal conduct by the defendant." 730 ILCS 5/5-8-4(c)(1) (West 2018). In imposing a consecutive sentence pursuant to section 5-8-4(c)(1), a court must set forth on the record the basis for doing so. *Id.*

¶ 33　　　　　　　Because the trial court is in the best position to consider the defendant's credibility, demeanor, general moral character, mentality, social environment, and habits, its imposition of a consecutive sentence will not be reversed on appeal absent an abuse of discretion. *People v. Buckner*, 2013 IL App (2d) 130083, ¶ 36, 997 N.E.2d 255. The record must demonstrate that the trial court concluded consecutive terms were necessary to protect the public. *Id.* ¶ 36. If the record does not support the trial court's determination that consecutive sentences are necessary to protect the public, an abuse of discretion has occurred. *Id.* ¶ 36. However, the trial court need not recite the language of section 5-8-4(c)(1), provided that the record shows that it believed that consecutive sentences were necessary to protect the public. *Id.* ¶ 37.

¶ 34    Here, in imposing the consecutive sentences, the trial court specifically referred to the language of section 5-8-4(c)(1). The court stated it considered the facts and circumstances of the offense and considered the distribution of heroin to be "a threat to the well-being of others." The court also considered defendant's history and character, noting his prior drug convictions, previous terms of imprisonment, as well as the "numerous revocations of *** various terms of probation." Although defendant argues that "[h]e is not some super-predator who needs to be locked away to protect the public from serial violence," section 5-8-4(c)(1) speaks of protecting the public from "criminal conduct" without specifying that such "criminal conduct" is "limited to conduct that results only in physical harm." *Id.* ¶ 41. "We cannot read into the statute a limitation not expressed." *Id.* Therefore, we are unable to say that the court was arbitrary, fanciful, or unreasonable in its view that, since 1998, defendant demonstrated a criminal disregard for the law. Defendant has been convicted of multiple separate offenses of unlawful delivery of a controlled substance. "[I]t is the facts and circumstances of a case *and* a defendant's history and character which a court is required to consider in determining to impose consecutive sentences. [Citation.] As such, that the facts, alone, may not warrant such sentences is unavailing to defendant." (Emphasis in original.) *People v. Douglas*, 208 Ill. App. 3d 664, 677, 567 N.E.2d 544, 552 (1991).

¶ 35    Additionally, the trial court expressly found consecutive sentences were necessary to protect the public from defendant's further criminal conduct, and we find the court did consider the nature and circumstances of the offenses. *Id.* at 676. Moreover, we note the trial court did not sentence defendant to the maximum allowable sentences for either charge. Given the foregoing, we cannot conclude the trial court abused its discretion in sentencing defendant to

two consecutive terms of 12 years' imprisonment on the two convictions for unlawful delivery of a controlled substance in case Nos. 19-CF-57 and 19-CF-58.

¶ 36                                B. Excessive Sentence

¶ 37       Defendant next contends the trial court abused its discretion by imposing an aggregate sentence of 24 years in prison for two counts of unlawful delivery of a controlled substance. Defendant asks this court to exercise our authority under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) and reduce his sentence "to a term much closer to the minimum of four years."

¶ 38       The trial court has discretion when sentencing, and we will not reverse the court's decision absent an abuse of that discretion. *People v. Snyder*, 2011 IL 111382, ¶ 36, 959 N.E.2d 656. The court is granted such discretion in sentencing because "the trial court is in a better position to judge the credibility of the witnesses and the weight of the evidence at the sentencing hearing." *People v. Ramos*, 353 Ill. App. 3d 133, 137, 817 N.E.2d 1110, 1115 (2004). The trial court errs where the sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000). We presume the sentencing court considered all relevant factors in aggravation and mitigation unless the record affirmatively reveals otherwise. *People v. Chirchirillo*, 393 Ill. App. 3d 916, 927, 913 N.E.2d 635, 645 (2009). When determining what constitutes an appropriate sentence, "a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment" are all considered. *People v. Hernandez*, 319 Ill. App. 3d 520, 529, 745 N.E.2d 673, 681 (2001).

¶ 39        In the case before us, defendant ultimately pleaded guilty to two counts of unlawful delivery of a controlled substance in case Nos. 19-CF-57 and 19-CF-58, both counts being Class 1 felonies. See 720 ILCS 570/401(c)(1) (West 2018). A person convicted of a Class 1 felony, other than for second degree murder, is subject to a sentencing range of 4 to 15 years in DOC. 730 ILCS 5/5-4.5-30(a) (West 2018). When a sentence falls within the statutory range of sentences possible for a particular offense, it is presumed reasonable. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56, 141 N.E.3d 320. As the trial court's 12-year sentence for each count falls within the relevant sentencing range, we will not disturb the sentence absent an abuse of discretion.

¶ 40        Defendant argues his sentence is excessive because "nobody was harmed by the transactions," and the sentence ignores the objective of restoring him to useful citizenship and the hardship his family would experience. "Where mitigating evidence has been presented, it is presumed that the trial court considered it." *People v. Lundy*, 2018 IL App (1st) 162304, ¶ 24, 118 N.E.3d 1246. "However, the existence of mitigating factors does not obligate the trial court to reduce a sentence from the maximum allowable." *People v. Williams*, 317 Ill. App. 3d 945, 955-56, 742 N.E.2d 774, 783 (2000). "A defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense." *People v. Pippen*, 324 Ill. App. 3d 649, 652, 756 N.E.2d 474, 477 (2001). "The seriousness of the offense is the most important sentencing factor." *People v. Watt*, 2013 IL App (2d) 120183, ¶ 50, 1 N.E.3d 1145. "The defendant bears the burden to affirmatively establish that the sentence was based on improper considerations, and we will not reverse a sentence *** unless it is clearly evident the sentence was improper." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 29, 82 N.E.3d 693. "The balance to be struck amongst the aggravating and mitigating factors is a matter of judicial

discretion that should not be disturbed absent an abuse of discretion." *People v. Crenshaw*, 2011 IL App (4th) 090908, ¶ 24, 959 N.E.2d 703. "In considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999).

¶ 41      While defendant makes much of a single statement made by the judge that he found no factors in mitigation, "a trial judge's statements at sentencing may not be considered in isolation." *People v. Csaszar*, 375 Ill. App. 3d 929, 952, 874 N.E.2d 255, 275 (2007). Viewing the record as a whole reveals the trial court had before it what little mitigating evidence existed. The court stated it considered (1) the factual basis at the time of defendant's guilty plea, (2) the PSI, (3) the financial impact of a sentence to DOC, (4) the evidence and arguments offered in aggravation, mitigation, and with respect to sentencing alternatives, and (5) defendant's testimony. Moreover, the court expressly stated it "did not ignore any of [defendant's] statements or any of the evidence presented." A trial court need not explicitly outline every single aspect of the mitigating factors it considered, and there is no affirmative evidence that the court ignored any mitigating evidence. See *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55, 8 N.E.3d 470.

¶ 42      Further, defendant emphasizes his crimes involved "extremely small quantities of heroin" and claims the facts warrant "a sentence closer to the minimum of four years." However, the trial court found defendant's criminal history and the need for deterrence were strong aggravating factors in this case. The record supports those findings. As an adult, defendant's criminal history spanned at least 20 years—nearly half of his life—beginning in 1998. Having previously received two sentences to DOC, "both dealing with heroin," and numerous revocations of his probation due to further criminal activity, defendant persisted in the unlawful

- 12 -

delivery of a controlled substance. As a result, the court determined that a substantial sentence was necessary to deter others from committing the same crime. Given those facts, it was entirely reasonable for the court to give less weight to the evidence in favor of rehabilitative potential, "as [defendant] had not taken advantage of previous opportunities to rehabilitate himself." *People v. Starnes*, 374 Ill. App. 3d 329, 337, 871 N.E.2d 815, 822 (2007).

¶ 43　　　　　Delivering any amount of a controlled substance to any individual on multiple occasions is a serious offense. We disagree with defendant's assertions on appeal that his selling the drugs, which were never consumed, to an undercover officer somehow makes the crimes less serious. The evidence of defendant's lengthy drug addiction as well as the amounts of heroin defendant sold were considered by the trial court. Defendant is essentially asking this court to reweigh the sentencing evidence, which we will not do.

¶ 44　　　　　Accordingly, we find the trial court did not abuse its discretion by imposing an aggregate 24-year sentence and decline to reduce defendant's sentence.

¶ 45　　　　　　　　　　　　III. CONCLUSION

¶ 46　　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 47　　　　　Affirmed.