THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHAYNE RINALDI, Defendant-Appellant.

Second District   No. 2—87—0395

Opinion filed February 1, 1989.

Appeal from the Circuit Court of Winnebago County; the Hon. John E. Sype, Judge, presiding.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas, of State Appellate Defender's Office, of Springfield, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, Robert J. Biderman, and Linda Cullom, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

After a jury trial, defendant, Shayne Rinaldi, was convicted of four counts of aggravated battery. Count I was premised on bodily harm inflicted on William E. Jackson while using a deadly weapon (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(1)), and count II was premised on causing great bodily harm to William E. Jackson (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a)). Similarly, count III was based on bodily harm to Stephen L. Jackson while using a deadly weapon (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(1)), and count IV was based on great bodily harm to Stephen L. Jackson (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a)). On April 13, 1987, the trial court sentenced defendant to two concurrent two-year terms of imprisonment for counts I and III

and imposed no sentence for counts II and IV. In addition, the trial court imposed a fine of $500 to be paid into the Violent Crime Victims Assistance Fund pursuant to section 10 of the Violent Crime Victims Assistance Act (the Act) (Ill. Rev. Stat. 1985, ch. 70, par. 510).

On appeal, defendant raises four issues: (1) whether the trial court erred in permitting the State to introduce testimony which implied that the defendant was involved in crimes unrelated to the charges of aggravated battery; (2) whether two of the convictions of aggravated battery must be vacated because they arose from a single act; (3) whether the $500 fine was properly imposed; and (4) whether defendant was entitled to credit against his term of imprisonment for the time spent in custody prior to his convictions. We affirm as modified and remand the cause with directions.

We summarize only the facts pertinent to the issues raised on appeal.

At trial, William Jackson testified that, on July 16, 1986, at approximately 10:30 p.m., he returned to his Rockford residence after an evening out with his wife, Peggy, and his son, Stephen. Upon his arrival home, William went to get his mail and saw an automobile that was approaching with its lights off. Realizing that he was right in the automobile's path, he jumped back onto the sidewalk. He described the vehicle that he saw as an old, light-colored, four-door model with a loud muffler. After this incident, William returned to his home and prepared to retire for the evening. A short time later, however, he heard noises in his driveway. He left his house to investigate these sounds and shortly thereafter was beaten by two attackers.

William Jackson recalled being struck by "a long metal object" which was about "18 inches to two feet" in length. The weapon was later identified as a pair of martial arts weapons called "numchucks." In court, William Jackson identified the defendant as one of the individuals who attacked him on the night in question. Jackson stated that the area where the attacks occurred was illuminated by two outdoor garage lights.

According to William Jackson, the assault on him continued until his son joined the fray. William sustained a wound above his left ear which cut through the skin and muscle, and another cut above that one which was just opened up slightly and bleeding. He was bruised on his right arm. His injuries later required hospitalization, and he received stitches.

The scuffle continued for a few moments, and then the two assailants started running through the backyard, pursued by William Jackson and his son, Stephen. William saw them get into an automobile

which was the same vehicle he had seen earlier that evening.

After the attackers had left, William Jackson returned home and called the police. Later that night, a search of the area produced the numchucks which had been dropped by one of the assailants.

Stephen Jackson corroborated his father's testimony concerning the events that occurred that evening. During his testimony, Stephen Jackson also identified Shayne Rinaldi as one of the individuals who attacked his father. Stephen also received injuries, having been struck by the numchucks when he came to his father's assistance. The injuries sustained by Stephen Jackson also required hospital treatment.

William and Stephen Jackson independently identified the defendant from a photographic lineup at the Rockford police department.

Shayne Rinaldi testified on his own behalf and denied being involved in the assaults on William and Stephen Jackson. The defendant stated that, on July 16, 1986, he had attended a cookout during the early evening hours; later, between 9:30 p.m and midnight, he had gone to a cousin's home. The defendant stated that, after he left his cousin's house at approximately midnight, he went to his grandmother's home, where he remained for the rest of the evening.

The defendant acknowledged that he had once owned a pair of numchucks, but he stated that they were smaller in size than the pair discovered on Jackson's lawn.

On cross-examination, the defendant was asked if he had ever stopped his car near a Rockford tavern at approximately midnight on July 16, 1986; defendant stated that he had not done so.

After this testimony, the State's rebuttal witness, William Scott, testified that on July 16, 1986, at approximately midnight, he was in the vicinity of the Stadium Lounge Tavern when he observed two individuals enter an automobile that had its engine running and its lights off. In court, Scott identified defendant as one of the individuals he observed entering the vehicle. Scott recalled that the license plate number of this vehicle was 803 186. Earlier at trial, Detective Picarilli had testified that defendant had told him that 803 186 was the license number of his car. The direct examination of Scott continued with the following testimony:

"Q. And what did you do when you got into the Stadium Lounge, what did you first do?

A. I talked to the owner and gave him the piece of paper with the license plate number on it.

Q. Later that evening did you have occasion to see or meet with any police officers in connection with the information you had given to *** the owner?

A. Yes.

MR. DECK [Defense Counsel]: I object.

THE COURT: Objection sustained. The answer is stricken."

After William Scott had been questioned on cross-examination about what he had observed in the parking lot of the Stadium Lounge, the prosecutor asked the following questions on redirect examination:

"Q. Why did you want to stick around to see what was going on that night?

A. I know the owner of the Stadium Lounge and there have been burglaries of automobiles where they have been broken into and the contents taken from inside the vehicles at their location.

MR. DECK: Judge, I am going to object and ask it be stricken.

THE COURT: This is proper response to the cross-examination, you may continue.

Q. Knowing this information that you have just indicated, why then did you want to stick around to see what was going on?

* * *

A. I was suspicious about a car running with its lights off and when the individuals came from parked cars instead of coming out of an exit and when, to me, they were young individuals not of drinking age, they wouldn't have been coming out of the tavern and I was suspicious.

MR. DECK: Judge, I object to that, I don't think this witness' speculation as to what may have been going on is relevant to this cause.

THE COURT: This subject was broached on cross-examination, the objection is overruled."

The defendant's grandmother, Nancy Rinaldi, testified that her grandson arrived at her home at approximately 12:15 a.m. on July 17, 1986.

●■ ■ Defendant contends that the trial court erred in allowing the State to introduce testimony which implied that defendant had been involved in crimes unrelated to the charges of aggravated battery for which he was on trial. The State maintains that the evidence did not imply that defendant was involved in burglarizing automobiles. We agree that no evidence was adduced that defendant had committed a burglary; the testimony stopped short of implicating the defendant in other crimes unrelated to the aggravated batteries.

Therefore, no error occurred. Even if it is possible to make a weak inference that defendant had been involved in criminal activity near the tavern, the evidence would have been permissible in this case. The general rule is that evidence of offenses other than those for which the defendant is being tried is inadmissible because of the risk of prejudice to the defendant. (*People v. Romero* (1977), 66 Ill. 2d 325, 330, 362 N.E.2d 288, 290.) However, there are well-established exceptions to the rule. Such evidence is admissible to show motive, intent, identity, absence of mistake, or *modus operandi*. Evidence of other offenses may be introduced if it tends to identify the accused as the person who committed the crime under investigation and to disprove an alibi. *Romero*, 66 Ill. 2d at 330, 362 N.E.2d at 290; *People v. Harris* (1970), 46 Ill. 2d 395, 399, 263 N.E.2d 35, 38.

At trial, no evidence was adduced that a burglary had been committed. The State did not attempt to elaborate or to show defendant's propensity for crime, but merely introduced evidence sufficient to show the circumstances of the witnesses' positive identification of the defendant and to show that the defendant's whereabouts on the evening in question differed from those claimed by defendant. Therefore, the trial court was correct in permitting the testimony to which defendant objected.

■ Defendant next argues that two of his four convictions should be vacated because each of the aggravated battery convictions based on great bodily harm arose from the same physical act as the aggravated battery convictions based on the use of a deadly weapon. Notwithstanding that the trial court imposed no sentence as to the great bodily harm convictions, we find no basis to vacate those convictions. Multiple convictions are not precluded where offenses arise from multiple acts even though closely related in time and where none of the offenses are, by definition, lesser included offenses. *People v. Dixon* (1982), 91 Ill. 2d 346, 355, 438 N.E.2d 180, 185; *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 845, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

*King* defined an "act" as any overt or outward manifestation which will support a different offense; no independent motivation is required to support each conviction. (66 Ill. 2d at 566, 363 N.E.2d at 844-45.) In *Dixon*, our supreme court determined that where the defendant had struck the victim several times with a club, the separate blows were not one physical act and could support convictions and concurrent sentences for both aggravated battery and mob action. In *People v. Williams* (1987), 155 Ill. App. 3d 332, 338-39, 508 N.E.2d 444, 448, we held that the defendant could be properly con-

victed and sentenced for both armed violence and aggravated battery based on a charge that the defendant committed aggravated battery causing great bodily harm by stabbing the victim and striking her about the face. We determined that such action constituted separate physical acts though closely related, one count alleging an element of the offense not found in the other.

■ In the present case, defendant's assault on the victims consisted of multiple acts, each injury constituting an independent offense caused by a separate physical blow. The evidence indicates that William Jackson was struck on the left side of the head, above his ear, on his arms, body, and legs; he also suffered a glancing blow to the top of his head. Stephen Jackson received blows on his right ear; his left ear was punctured, and the pinky finger of his left hand was broken. We conclude that defendant's convictions on all counts of aggravated battery were proper, and sentences on each count could and should have been imposed. *Williams*, 155 Ill. App. 3d at 338, 508 N.E.2d at 448; see also *People v. Dixon*, 91 Ill. 2d at 354-56, 438 N.E.2d at 184-85.

■ Next, defendant contends that the imposition of a fine of $500 was improper and must be reduced because it is in excess of the fine authorized by statute. We agree in part. Section 10 of the Act (Ill. Rev. Stat. 1987, ch. 70, par. 510) sets out a schedule of charges to be imposed in conjunction with a conviction for any offense enumerated. We believe that the schedule of statutory charges is mandatory, not directory. The court imposed a fine a portion of which under section 10(b) would be assigned to the Violent Crime Victims Assistance Fund. Contrary to the mandate of the statute, the trial court attempted to assign the entire fine to the fund. The plain language of the statute gives no discretion to the trial court to fix the amount of the charges assigned to the fund. The schedule of charges does not provide for minimum or maximum charges; such provisions are usually found in criminal statutes when the legislative intent is to give trial courts discretion in assessing the penalties. In the absence of any legislative intent to grant the trial court discretion in assessing the charges in this instance, we find that the schedule of charges is mandatory and the trial court had no discretion to assign a charge in excess of $4 for every $40 of fine assessed as provided by the statute. (Ill. Rev. Stat. 1987, ch. 70, par. 510(b); see *People ex rel. Ward v. Salter* (1963), 28 Ill. 2d 612, 615, 192 N.E.2d 882; 1984 Att'y Gen. Op. 72, 76.) Thus, defendant is entitled to a reassessment of his fine consistent with section 10 of the Act (Ill. Rev. Stat. 1987, ch. 70, par. 510).

Defendant also correctly asserts that he is entitled to credit against his sentence of imprisonment for any time spent in custody prior to the imposition of his sentence. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—7(b); see also *People v. Scheib* (1979), 76 Ill. 2d 244, 252, 390 N.E.2d 872, 875.) The record indicates that defendant spent time in custody on one day prior to posting bond in the proceeding below. Consequently, we remand the cause for a finding of the applicable time served and issuance of an amended mittimus reflecting the appropriate credit for time served by the defendant.

In view of the foregoing, we affirm the four convictions and remand the cause for sentencing on the two great bodily harm convictions to be served concurrently with the other two convictions; for the reassessment of a fine consistent with this court's rulings; and, further, for the issuance of an amended mittimus.

The judgment of the circuit court of Winnebago County is affirmed as modified, and the cause is remanded with directions.

Affirmed as modified; cause remanded with directions.

WOODWARD and LINDBERG, JJ., concur.