THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRELL WILKINS, Defendant-Appellant.

First District (4th Division)   No. 1—91—0913

Opinion filed August 26, 1993.

Rita A. Fry, Public Defender, of Chicago (Mary C. Arundel, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica Calderon, and Marcia G. Northrup, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Darrell Wilkins, was tried separately but simultaneously with two codefendants in the circuit court of Cook County. Following defendant's bench trial, he was convicted of delivery of a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)), and sentenced to a prison term of 16½ years. On appeal, defendant contends (1) the trial court erred in denying his pretrial motions; (2) the trial court improperly denied his motion for a continuance; (3) he was not proved guilty beyond a reasonable doubt; (4) the trial court improperly admitted hearsay evidence; and (5) he was prejudiced by the State's failure to disclose that the informant had been paid.

We affirm.

At trial, police officer Claude Kaysen testified that on December 29, 1988, he was working in an undercover capacity when he met defendant at a restaurant to discuss a drug transaction. When defendant arrived at the restaurant, confidential police informant Steve Bouchet, also known as Steve Glover, introduced Kaysen to defendant as "Jeff." After exchanging greetings, defendant informed Kaysen that he was carrying two kilos of cocaine inside his coat. Kaysen suggested defendant find something else to carry the cocaine in, after which

defendant made a telephone call and then left the restaurant. When defendant returned moments later carrying a plastic bag, he and Kaysen began discussing the purchase price.

Defendant stated that his father, who owned the cocaine, wanted $20,000 per kilo. He also stated that if the transaction went smoothly, Kaysen could purchase cocaine for $15,000 per kilo in the future. Rejecting defendant's offer, Kaysen suggested that defendant arrange a lower purchase price. Defendant made another call using Kaysen's mobile telephone and spoke with someone about the price. Subsequently, defendant and Kaysen went to the bathroom where they tested the cocaine. Defendant and Kaysen later left the restaurant and met on a street corner two blocks away. There Kaysen told defendant he was not ready to make the purchase and the two exchanged telephone numbers before leaving.

On January 3, 1989, Kaysen spoke with defendant twice by telephone concerning the drug buy; however, they could not agree upon a price. During one of these conversations, defendant discussed the sales price with his father and, according to Kaysen, he overheard defendant's father ask defendant, "how do you know that he's [Kaysen] not the police working undercover?" Kaysen unsuccessfully attempted to contact defendant two days later but learned that defendant's telephone had been disconnected.

On January 23, 1989, defendant contacted Kaysen and the two agreed to meet at a restaurant later that afternoon. The informant was also present at this meeting. At the restaurant, Kaysen asked defendant about his whereabouts since their last meeting. Defendant stated he had been in Florida conducting cocaine business with his father. After some discussion, defendant told Kaysen the cocaine would cost $23,000 per kilo. Kaysen agreed, but said he needed time to get more money. Defendant said he would contact Kaysen on his pager once a meeting place had been selected.

Defendant contacted Kaysen later that evening and they agreed to meet in a restaurant parking lot located on South Racine Avenue, in Chicago. When defendant arrived, he approached Kaysen's car and stated he had to count the money before having the cocaine brought over. Kaysen refused to remove the money from the trunk and the two went inside the restaurant. After some discussion, defendant made a telephone call and then told Kaysen his father would send over the cocaine and notify them by signaling defendant's pager. When defendant's pager rang, he and Kaysen went outside to the parking lot.

Once outside, defendant patted Kaysen down for a wire before entering Kaysen's car. Moments later, defendant exited the car and walked over to a light blue truck parked nearby. Defendant soon returned to Kaysen's car and made several calls, using Kaysen's mobile telephone. Thereafter, defendant again exited the car, after which Kaysen, using a police radio, requested that the surveillance vehicle parked across the street be moved as defendant indicated that he thought it was a police vehicle.

Moments later, defendant returned to the gas station across the street, riding in the blue truck which was followed by a brown car. Defendant and his codefendants exited the two vehicles and stood talking at the gas station. Then, defendant and a codefendant crossed the street and approached Kaysen's car. They asked to count the money, but Kaysen refused stating that defendant had already done so. Defendant and the codefendant went back across the street and defendant retrieved a brown bag from the driver of the truck. Defendant entered the brown car, which was then driven across the street and parked near Kaysen's car. Defendant entered Kaysen's car and handed him the bag containing two kilos of cocaine. After opening the packages, Kaysen gave the pre-arrest signal and the surveillance officers arrested defendant. The informant was not present when the transaction took place.

Also at trial, defendant's mother testified that during every weekend in 1988 she lived with defendant and his wife and son in a apartment on Erie Street in Chicago. Likewise, defendant's wife also testified that she lived with defendant in the same apartment until January 1989. Defendant's wife and mother each stated that during the latter part of 1988 defendant often received telephone calls from a person named Steve.

In his defense, defendant testified that he met the confidential informant in the fall of 1987. Defendant was unemployed for approximately four months in the beginning of 1988. During this time, the informant told defendant he could earn extra money if he would attend a few parties hosted by the informant and sell drugs to the guests. Defendant refused despite the informant's repeated requests.

Defendant further testified that in June 1988 he borrowed $450 from the informant. Five months later, after defendant had failed to repay the loan, the informant told defendant the debt had increased to $1,500. In December 1988, the informant told defendant that he would excuse the debt if defendant would find cocaine for him and his brother-in-law. Defendant testified that he contacted his uncle, who agreed to give defendant the cocaine. Defendant met the confidential

informant and his brother-in-law, Jeff, at a restaurant later that same night.

Following his bench trial, defendant was found guilty of delivery of a controlled substance. The trial court later denied his motion for a new trial. The trial court sentenced defendant to 16½ years in the Illinois Department of Corrections. Defendant then filed this appeal.

■ Defendant first contends that the trial court erred in denying his pretrial motions requesting that the State produce the informant and that the State demonstrate it made a good-faith effort to locate the informant. The State responds that it had no obligation to produce the informant or establish it made a good-faith attempt to locate the informant because defendant failed to establish the need for disclosure.

At the outset, we note that, while defendant claimed he was entrapped by the informant, this case does not involve the nondisclosure of the informant's existence or identity. Defendant acknowledges that he was aware of the informant's name prior to trial, and that the State had provided him with the informant's last known whereabouts. In dispute, however, is whether the trial court's failure to require the State to show it made a good-faith effort to locate the informant or to produce the informant violated defendant's due process rights.

Before the State is obliged to produce an informant, or to show that it made a good-faith effort to locate the informant, defendant must first establish the materiality and relevance of the informant's testimony. (*People v. Torres* (1989), 189 Ill. App. 3d 494, 501.) Here, defendant argues that he sufficiently demonstrated the relevance of the informant's testimony. Based on the evidence, we cannot agree. No evidence was presented indicating that the informant either participated in the crime or was present near the scene of the crime when defendant was arrested. This leads us to believe that the informant's testimony would have done little to aid defendant's theory of defense. See *People v. Hodges* (1987), 159 Ill. App. 3d 38, 41.

Moreover, unlike the defendant in *People v. Connor* (1988), 176 Ill. App. 3d 900, defendant here offered no credible evidence or specific details to support his allegation that he was entrapped. We agree with the trial court that defendant's mere speculation of the informant's exculpatory statements was insufficient to grant defendant's pretrial motions. Hence, we hold that the trial court properly denied defendant's pretrial motions.

■ Second, defendant argues that the trial court erred in failing to grant him a continuance to locate the informant. Defendant asserts the trial court abused its discretion because it failed to rule on his

pretrial motion to disclose the informant's identity in a timely manner, and he was given only four days in which to locate the informant.

Motions for a continuance are addressed to the sound discretion of the trial judge whose ruling will not be disturbed unless a clear abuse of discretion is shown. (*People v. Amos* (1990), 204 Ill. App. 3d 75, 83.) An abuse of discretion cannot be found where the defendant fails to show that he was prejudiced by the lack of additional time. (*People v. Coleman* (1990), 203 Ill. App. 3d 83, 100.) Here, we are unpersuaded that defendant was in any way prejudiced by the trial court's denial of a continuance. The evidence supports the trial court's determination that the informant was not transactional and, as such, his testimony would have done little to aid defendant's defense. (See *People v. Hodges* (1987), 159 Ill. App. 3d 38, 41.) Moreover, the trial court ruled, based on the circumstances before it, that the informant was not within the control of either party and could not be located. Under these facts, we find no abuse of discretion in the trial court's denial of the motion for continuance.

■ Next, defendant contends that the State failed to prove him guilty beyond a reasonable doubt by its failure to disprove the evidence of entrapment. Pointing out that he lacked any prior drug convictions, defendant argues that he sufficiently raised the defense of entrapment which the State was required to prove the absence thereof. In response, the State maintains that defendant's conviction should be affirmed because the evidence supports the trial court's finding of guilt.

Where a defendant has properly raised the defense of entrapment, the prosecution must then prove the nonexistence thereof before defendant can be convicted. (Ill. Rev. Stat. 1987, ch. 38, par. 7—12.) (See also *People v. Gannon* (1991), 213 Ill. App. 3d 560, 565.) Whether defendant was entrapped or merely afforded an opportunity to commit an offense is determined by the trier of fact. (*People v. Tipton* (1980), 78 Ill. 2d 477, 487.) Following a conviction, a reviewing court must affirm where, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant guilty beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) This same standard of review is applicable to entrapment cases. *Gannon*, 213 Ill. App. 3d at 565.

In the case at bar, the trial court determined that defendant had not properly raised the defense of entrapment as there was no credible evidence presented in support of the defense. The trial court found the testimony by defendant and his mother and wife to be unbelievable. Undoubtedly, the trier of fact determines the credibility of

witnesses. (*People v. Saunders* (1990), 206 Ill. App. 3d 1008, 1013.) Based on our review of the record, we find that the evidence, when viewed in the light most favorable to the prosecution, supports the trial court's finding of guilt.

■ Defendant also argues that he was prejudiced by the trial court's admission of testimony regarding what Officer Kaysen overheard during a telephone conversation with defendant on January 3, 1989. At trial, Officer Kaysen testified as to what defendant's father had said during Kaysen's conversation with defendant. While defendant objected to this testimony at trial, he failed to raise the issue in his post-trial motion; therefore, he has waived this issue on appeal. *People v. Enoch* (1988), 122 Ill. 2d 176, 186.

■ Finally, defendant argues that the State committed prejudicial error by failing to disclose the fact that the informant had been paid. Defendant asserts a new trial is warranted because the State's failure to do so impacted his tactical decision to waive his right to a jury trial.

In response, the State correctly notes that when defendant was made aware that the informant had been paid he failed to take any affirmative action at the trial concerning the discovery violation. Where a defendant learns that the prosecution has failed to disclose requested discovery information, he must either seek a continuance or request appropriate sanctions; otherwise, the issue is waived. *People v. Williams* (1980), 91 Ill. App. 3d 631, 633.

Notwithstanding the waiver rule, Supreme Court Rule 615(a) provides that plain error or defects affecting substantial rights may be considered although they were not brought to the attention of the court. (107 Ill. 2d R. 615(a).) However, the plain error rule may be invoked in criminal cases only where the evidence is closely balanced or the error was of such magnitude as to deny defendant a fair trial. (*People v. Young* (1989), 128 Ill. 2d 1, 47.) In light of the strong evidence of defendant's guilt, and the absence of any evidence in the record that he was denied a fair trial, we consider the plain error doctrine inapplicable here.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

JIGANTI, P.J., and HOFFMAN, J., concur.