635 N.E.2d 700 (1994)
263 Ill. App.3d 665
200 Ill.Dec. 361
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Charles ABSTON, Defendant-Appellant.
No. 1-91-0752.
Appellate Court of Illinois, First District, Fifth Division.
May 13, 1994.
*702 Michael J. Pelletier, Deputy Defender, Todd Avery Shanker, Asst. Appellate Defender, Office of the State Appellate Defender, Chicago, for appellant.
Jack O'Malley, State's Atty., Chicago (Renee Goldfarb, James E. Fitzgerald, of counsel), for appellee.
Justice GORDON delivered the opinion of the court:
Defendant was found guilty after a bench trial of delivery of a controlled substance. He was sentenced to 17 years' imprisonment to run consecutive to four and six-year sentences he received for other related delivery charges. On appeal, defendant alleges that (1) he was denied his right to a fair trial *703 where the trial judge acted as a fact finder in a separate simultaneous bench trial of a codefendant; (2) he was denied his right to confrontation when the trial court failed to order the State to produce a confidential informant; (3) the imposition of consecutive sentences was improper; and (4) the trial judge improperly considered a factor inherent in the offense in sentencing him. For the reasons set forth below, we affirm the judgment of the trial court. FACTS
On June 21, 1989, defendant Charles Abston was arrested with codefendant Floyd Sample and charged with delivery of a controlled substance involving one kilogram of cocaine. Defendant Abston pled guilty to two related charges of delivery of a controlled substance. Both defendants waived their right to a jury trial on the charge involving the one kilogram of cocaine. Abston properly notified the State that he intended to present a defense of entrapment.
Immediately prior to trial, the following exchange took place:
"THE COURT: Is there any objection to defendants being tried together? Any reason why they shouldn't?
[ABSTON'S ATTORNEY]: I don't know any reason at this time your Honor.
THE COURT: Well, you better know because this is the time to know.
[ABSTON'S ATTORNEY]: Yes, sir.
THE COURT: Is there any reason? If there is, you better state it now."
Abston's counsel did not respond and the court proceeded to try the two cases together.
Undercover agent John Backshis testified that at approximately 1:30 p.m. on March 13, 1989, he and an informant arrived at a parking lot where they were to meet defendant. He gave the informant $230 and instructed him to purchase an eighth of an ounce of cocaine from defendant. The informant entered defendant's vehicle, had a short conversation with defendant and then returned to Backshis' vehicle with two packets containing cocaine. Backshis could not see the exchange of money for cocaine from his vantage point.
Backshis stated that on March 17, 1989, he and the informant met defendant at the latter's place of employment. Backshis asked defendant the cost of an eighth of an ounce of cocaine and subsequently paid him $230 for that amount. After the informant asked if defendant and Backshis could deal with each other directly, defendant gave Backshis his beeper number. According to Backshis, this was the last time he saw the informant.
On March 21, 1989, Backshis directly contacted defendant and purchased an ounce of cocaine from him. Approximately two months later on May 31, 1989, Backshis again directly contacted the defendant and subsequently purchased one ounce of cocaine for $1,000.
Backshis related that on June 20, 1989, he contacted defendant again, seeking to purchase a kilogram of cocaine. Defendant replied that a kilogram would cost $21,000. Backshis met with defendant and his supplier that night, but no transaction was ever consummated because contrary to the supplier's insistence, Backshis refused to turn over the money first and then wait for delivery of the cocaine. Backshis told defendant to call him if he could arrange another deal for the cocaine.
Backshis' testified that defendant contacted him the next day and told him that he had a kilogram of cocaine to sell for $21,000. Backshis and defendant met outside of defendant's place of employment. Defendant told Backshis that the kilogram of cocaine was in a car in the parking lot and that he wanted to consummate the deal on a side street adjacent to his place of employment.
Backshis said that defendant went back inside his place of employment and then reemerged with defendant Floyd Sample. Defendant nodded to Backshis, pointed to defendant Sample and then began to walk towards the end of the parking lot. Sample then entered the car which defendant had indicated contained the cocaine, removed a brown bag and handed it to Backshis. Backshis examined the package and, after determining that it contained cocaine, signaled to other officers to arrest defendant and Sample.
*704 On cross-examination, Backshis testified that he had not seen the informant since the second buy and was not aware of his current whereabouts. Backshis stated that he was unaware whether the informant had a criminal background. Backshis confirmed that defendant was not charged with either of the buys in which the informant was involved. He acknowledged that he had several phone conversations with defendant between May 31 and June 20th. Backshis denied that defendant ever refused to sell him a kilogram of cocaine.
Backshis' account of the events of the arrest itself were corroborated by fellow agent Mark McNabney. The State then rested. At the close of the State's case, both defense counsels moved for a directed finding of not guilty which was denied. Abston's counsel then moved for the court to order the State to produce the informant. The trial court denied this request, stating that the informant was only involved in transactions which occurred several months before the one with which defendant was charged.
After the State rested, but before either defendant put on his defense, Abston's counsel made a motion for severance on the grounds that defendant Sample's testimony would be prejudicial to his client. This motion was granted by the trial judge. Defendant Sample's counsel then put on his case in chief. After defendant Sample rested, the trial court stated that because it granted a severance, it intended to hear closing arguments in Sample before it would hear defendant Abston's case. After arguments were concluded in Sample's case, the trial court found defendant Sample guilty of delivery of a controlled substance. In explaining its holding, the trial court stated that it found Backshis to be a credible witness and that it did not believe the testimony of defendant Sample.
Defendant Abston then proceeded with his defense. He testified on his own behalf that he met the informant in a bar in February 1989. According to Abston, the informant asked him to act as a middleman in a cocaine buy "so [the informant] could charge [the buyer] more money." Abston stated that he initially refused, but eventually relented to act as a middleman shortly before the March 13, 1989, meeting. Abston said he received $30 from the informant for delivering the informant's cocaine to Backshis.
Abston stated that this same pattern was followed at the March 17, 1989, meeting. He gave Backshis his beeper number at that meeting only because he thought the informant wished it. Abston said that he next met Backshis alone, but gave him the informant's cocaine. The same was true with respect to the events of May 31, 1989, when Abston sold an ounce of the informant's cocaine to Backshis.
Abston said that he received repeated calls from Backshis between May 31 and June 20 regarding the purchase of larger amounts of drugs. Although he initially refused the repeated requests of Backshis for a kilogram of cocaine and the repeated requests of the informant to deliver such cocaine, Abston subsequently attempted to set up the sale of a kilogram of cocaine to Backshis on June 20, 1989. Abston stated that the June 20, 1989, sale fell through when Backshis refused to pay in advance for the cocaine.
Abston testified that the June 21, 1989, meeting which resulted in his arrest was set up by a phone call from the informant. Abston stated that defendant Sample came to his place of employment and told him that he had been sent by the informant and that the sale would be transacted in the parking lot. On cross-examination, Abston admitted that he was convicted of possession of cocaine in 1987.
The trial court found that the evidence established beyond a reasonable doubt that defendant was not entrapped and that he was guilty of delivery of a controlled substance. At the sentencing hearing, defendant presented no evidence in mitigation. Defense counsel did, however, bring to the court's attention several mitigating factors contained in the pre-sentencing report including: defendant's family ties, his employment history, and that he went to college for two years. In aggravation the State presented defendant's prior conviction for possession of a controlled substance.
*705 The trial court sentenced defendant to concurrent terms of four and six years on the two counts to which defendant pled guilty. The trial court then imposed a 17-year sentence on the charge involving the kilogram of cocaine for which defendant stood trial. The 17-year sentence was to run consecutive to the concurrent four and six year terms defendant Abston received on the other charges. In so doing the court stated that it was relying on facts in the pre-sentencing report and those adduced in mitigation and aggravation. The court said that "I don't mind telling you this is a serious crime. A large amount of drugs were involved here, and I noted your prior conviction. Prior criminal delinquency. It appears in the pre-sentence investigation report." The trial court also said that it was aware that consecutive sentences were not mandatory in this instance. Defendant now appeals his conviction and his sentence.

OPINION
On appeal, defendant first argues that he was denied his right to a fair trial because the trial court acted as a fact finder in both his and Sample's bench trial and found Sample guilty before he (Abston) put on his case in chief. Specifically, defendant Abston argues that he was denied an impartial fact finder because in finding Sample guilty, the trial court found Backshis to be a credible witness. Defendant Abston urges that this finding concerning Backshis' credibility indicates that the trial court had already predetermined the issue of guilt in his case even before he presented his defense.
The State initially contends that defendant has waived this error through his actions at trial and by failing to specify this error in his written post-trial motion. (People v. Enoch (1988), 122 Ill.2d 176, 119 Ill. Dec. 265, 522 N.E.2d 1124.) We agree that defendant has waived this issue for purposes of review because he failed to specify this ground in his post-trial motion. People v. Enoch, 122 Ill.2d at 186, 119 Ill.Dec. 265, 522 N.E.2d 1124.
Moreover, defendant's actions at trial would also preclude him from asserting this ground as error on appeal. Here, the trial court specifically asked Abston's counsel prior to trial whether he wanted a severance and Abston's counsel replied that he was not aware of any reason for a severance. Only after the State rested, did Abston's counsel move for a severance. After granting the severance, the trial court clearly articulated the course it intended to follow in completing defendant Sample's case and then completing Abston's case, yet defense counsel never indicated that such a procedure would be unacceptable. In such an instance, where the trial court's course of action is taken at defendant's suggestion and the defendant thereafter acquiesces in the court's expressed course of conduct, the defendant should be precluded from raising such course of conduct as error on appeal. People v. Crossley (1992), 236 Ill.App.3d 207, 217, 177 Ill.Dec. 505, 603 N.E.2d 575 ("[w]here a party acquiesces in proceeding in a given manner, he is not in a position to claim he was prejudiced thereby"); People v. George (1993), 263 Ill.App.3d 968,___, 201 Ill.Dec. 250, 636 N.E.2d 682 ("[i]t is indeed insufferable to allow defendant to knowingly participate in a bench trial without protest * * * with a view that if an adverse judgment is rendered, he would be granted a new trial").
However, even were we to address the merits of Abston's claim in the absence of waiver (People v. Heidorn (1983), 114 Ill. App.3d 933, 70 Ill.Dec. 439, 449 N.E.2d 568; People v. Kelley (1983), 113 Ill.App.3d 761, 69 Ill.Dec. 538, 447 N.E.2d 973), we would conclude that he was not denied a fair trial.
Abston's claim that he was denied a fair trial because the trial judge was not impartial is based entirely on the fact that the trial court found defendant Sample guilty, and Backshis' credible, before defendant put on his case in chief. Defendant's position is therefore predicated upon the presumption that the trial judge lost his ability to be impartial and to hear the evidence with an open mind merely because he made a finding that Backshis was credible with respect to defendant Sample's case. Such a presumption, however, is clearly contrary to well established law in Illinois which recognizes the *706 ability of a trial judge sitting as a fact finder in a bench trial to separate the evidence offered against different defendants and to compartmentalize the cases to ensure the integrity of each defendant's trial. See People v. Bedell (1993), 253 Ill.App.3d 322, 191 Ill.Dec. 930, 624 N.E.2d 1308; Crossley, 236 Ill.App.3d at 218,177 Ill.Dec. 505, 603 N.E.2d 575 ("[biased upon his particular training and experience, a trial judge, acting as a trier of fact, is generally believed to have a superior ability to restrict his use of improper evidence").
This ability to compartmentalize evidence was reaffirmed by our supreme court in People v. Schmitt (1989), 131 Ill.2d 128, 137 Ill.Dec. 12, 545 N.E.2d 665. There, two defendants were tried in simultaneous bench trials in which the evidence against one codefendant, including statements implicating the other codefendant, were not to be considered against the other codefendant. The trial court delayed ruling on one defendant's case until the other codefendant completed his case. The court then found both defendants guilty. The appellate court reversed the trial court stating that the United States Supreme Court's decision in Bruton v. United States (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, mandated a severance. (People v. Schmitt (1988), 173 Ill.App.3d 66, 122 Ill. Dec. 886, 527 N.E.2d 384.) The supreme court reversed the appellate court and reinstated the judgment of the circuit court, stating,
"Furthermore, unlike the appellate majority, we believe a trial court is capable of compartmentalizing its consideration of evidence. To do so is no `Herculean' task, but one which courts across the State engage in every day. To be sure, there are situations which would seemingly tax even the most disciplined legal minds [citations]; however, the circumstances of this case do not fall into that category. We do not mean to imply that the procedures employed in the instant case is without pitfallsthere are many. Any court employing such a procedure would do well to exercise the utmost caution to recite for the record its finding in each case and the reasons for its rulings. That said, we do not find the task beyond the abilities of circuit court judges or one to be undertaken only by the offspring of Zeus." People v. Schmitt, 131 Ill.2d at 137-38,137 Ill.Dec. 12, 545 N.E.2d 665.
We recognize that defendant here does not allege that the trial court improperly considered inadmissible evidence, but rather claims that the fact finder was not impartial. Defendant's position, however, is necessarily predicated on the trial court's failure to compartmentalize the two separate cases before it, a factor which defendant has failed to demonstrate in any affirmative manner and one which is not apparent from the record.
There is no indication in the proceedings below that the trial court was not impartial in rendering its decision with respect to Abston because of an inability to separately consider the cases before it. (See Bedell, 253 Ill. App.3d at 330-31, 191 Ill.Dec. 930, 624 N.E.2d 1308 (finding that trial court properly compartmentalized the evidence in simultaneous bench trials of two codefendants charged with delivery of a controlled substance); Crossley, 236 Ill.App.3d at 218, 177 Ill.Dec. 505, 603 N.E.2d 575.) It is true that the trial court decided Sample's case and Backshis' credibility relative to Sample before defendant Abston put on his case in chief. However, the sequential order of the court's decision in these two cases does not compel the conclusion that the court had thought that its decision in Sample had prejudged any of the issues in the Abston case. (Schmitt, 131 Ill.2d at 137-38,137 Ill.Dec. 12, 545 N.E.2d 665; Bedell, 253 Ill.App.3d at 330-31, 191 Ill.Dec. 930, 624 N.E.2d 1308; Crossley, 236 Ill.App.3d at 218-19, 177 Ill. Dec. 505, 603 N.E.2d 575.) We note that the trial court did not articulate any opinion as to the Abston case when it rendered its decision in Sample. (See People v. Diaz (1971), 1 Ill.App.3d 988, 275 N.E.2d 210.) There is no indication that the trial court had predetermined Abston's case or relied on any improper evidence in that determination, in spite of the contrary inference defendant asks us to draw from the order in which the cases were decided. Nor did the record demonstrate any unwillingness by the trial court to hear and consider any pertinent evidence or argument presented by Abston during the presentation *707 of his defense, even if such evidence or argument was directed to the veracity of Backshis.
We further note that there was, in fact, very little variance between Backshis' testimony and that of Abston. Abston's testimony substantially corroborated Backshis' recollection of the common events in the case. Abston did not dispute Backshis' testimony, rather it was the testimony of defendant Sample which could not be reconciled with Abston's testimony. Therefore, even if any inference from the trial court's comment that Backshis' was credible and defendant Sample was not credible could be drawn, it would not necessarily have been prejudicial. See George (1993), 263 Ill.App.3d at ___, 201 Ill.Dec. 250, 636 N.E.2d 682.
In light of these facts and circumstances, we cannot say that defendant was denied a fair trial. (Schmitt, 131 Ill.2d at 137-38, 137 Ill.Dec. 12, 545 N.E.2d 665.) To find to the contrary would undercut the foundation underlying simultaneous bench trialsthat the trial court can separate the evidence offered by and against one defendant from that evidence offered by and against another defendant to preserve the integrity of each proceeding. See Schmitt, 131 Ill.2d at 137-38, 137 Ill.Dec. 12, 545 N.E.2d 665; Bedell, 253 Ill.App.3d at 330-31, 191 Ill.Dec. 930, 624 N.E.2d 1308; Crossley, 236 Ill.App.3d at 217-18, 177 Ill.Dec. 505, 603 N.E.2d 575.
Abston next asserts that he was denied his right to confrontation under the sixth and fourteenth amendments to the United States Constitution (U.S. Const, amends VI and XIV), by the trial court's failure to order the State to produce the informant in this case. Defendant Abston argues on appeal that his entrapment defense "disintegrated" as a result of the failure to order the production of the informant since that informant possessed information which was relevant and helpful to his defense. In this respect, defendant points to the fact that his motion to compel production of said informant specifically alleged that the informant encouraged defendant to sell drugs to Backshis and that it was the informant who supplied the drugs.
In People v. Holmes (1990), 135 Ill.2d 198, 142 Ill.Dec. 172, 552 N.E.2d 763, the Illinois Supreme Court stated that the proper mechanism for determining whether the State is required to produce a government informant for trial is the three-part Stumpe test. (See Holmes, 135 Ill.2d at 212, 142 Ill.Dec. 172, 552 N.E.2d 763; People v. Stumpe (1979), 80 Ill.App.3d 158, 35 Ill.Dec. 458, 399 N.E.2d 292.) Under this test, when a defendant "seeks production of a governmentally employed informant, the defendant must first demonstrate the materiality and relevance of the informant's testimony." (Holmes, 135 Ill.2d at 212, 142 Ill.Dec. 172, 552 N.E.2d 763.) Once the defendant has met this initial burden, "the State must produce the informant, or if that is impossible, the State must demonstrate that it exerted a good-faith effort to make the witness available." (Holmes, 135 Ill.2d at 212, 142 Ill.Dec. 172, 552 N.E.2d 763.) Finally, if the State cannot produce the witness after a good faith effort, the defendant "must affirmatively demonstrate that the informant's testimony `would tend to be exculpatory or would create a reasonable doubt as to the reliability of the prosecution's case either through direct examination or impeachment.'" Holmes, 135 Ill.2d at 213,142 Ill.Dec. 172, 552 N.E.2d 763.
We first address whether defendant Abston has met the first prong of the Stumpe test. The determination of materiality is the responsibility of the trial judge and is subject to an abuse of discretion standard. (DiBlasio v. Keane (2d Cir.1991), 932 F.2d 1038.) The materiality standard is "nothing more than the burden that is required anytime a defendant seeks disclosure of an informant's identity under [Roviaro v. United States (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639]" (Holmes, 135 Ill.2d at 212, 142 Ill.Dec. 172, 552 N.E.2d 763), that is defendant must show that the informant's testimony is "relevant and helpful to the accused's defense." (Roviaro, 353 U.S. at 62, 77 S.Ct. at 628, 1 L.Ed.2d at 646.) In deciding the issue of materiality, the trial court can consider several factors including whether the informant played an active role in the criminal occurrence or witnessed the offense. People v. Raess (1986), 146 Ill.App.3d 384, *708 100 Ill.Dec. 121, 496 N.E.2d 1186; People v. Chaney (1976), 63 Ill.2d 216,347 N.E.2d 138).
We cannot say that the denial of defendant's request for the production of the informant was an abuse of discretion with respect to the materiality prong of the Stumpe test. The charge defendant was on trial for was the result of the June 21, 1989, meeting, which occurred three months after Backshis' last meeting with the informant and which occurred after several interim drug transactions in which only Abston and Backshis were present. (People v. Crose (1990), 194 Ill.App.3d 97, 141 Ill.Dec. 56, 550 N.E.2d 1102.) On point is People v. Thornton (1984), 125 Ill.App.3d 316, 80 Ill.Dec. 703, 465 N.E.2d 1049. There, the court denied the defendant's request for production of an informant who participated in the first of three drug transactions. (Thornton, 125 Ill.App.3d at 317, 80 Ill.Dec. 703, 465 N.E.2d 1049.) The court stated that the defendant's contention that the informant's testimony was relevant to the charge at trial, the third of the three transactions, was speculative and insufficient to require production of the informant. Thornton, 125 Ill.App.3d at 318-19, 80 Ill. Dec. 703, 465 N.E.2d 1049; see also Crose, 194 Ill.App.3d at 104, 141 Ill.Dec. 56, 550 N.E.2d 1102.
Moreover, defendant's motion for production alleged that the informant "introduced defendant to Agent Backshis; encouraged defendant to sell drugs to Agent Backshis and supplied the drugs sold to Agent Backshis." That motion did not assert that the informant continued to work with the police following the initial meeting or that the informant had any contact whatsoever with the police thereafter. To the contrary, Backshis' testimony established that he, the only agent of the State known to be in contact with the informant, did not have any contact with the informant after that March 17, 1989, meeting. (See People v. Contursi (1979), 73 Ill. App.3d 458, 29 Ill.Dec. 774, 392 N.E.2d 331.) In light of these factors, we cannot say that the trial court's decision not to order the production of the informant based solely on defendant's assertions, constituted an abuse of discretion. See People v. Wilkins (1993), 252 Ill.App.3d 646, 192 Ill.Dec. 207, 625 N.E.2d 167 (defendant's failure to offer credible evidence or specific details to support his allegations of entrapment were insufficient to require reversal); Crose, 194 Ill.App.3d at 104,141 Ill.Dec. 56, 550 N.E.2d 1102; Thornton, 125 Ill.App.3d at 318-19, 80 Ill.Dec. 703, 465 N.E.2d 1049.
Even if Abston satisfied the first prong of the Stumpe test, it is clear that he has failed to satisfy the third prong of that test. As previously mentioned, under the higher burden of the third prong of the Stumpe test, the defendant "must affirmatively demonstrate that the informant's testimony `would tend to be exculpatory or would create a reasonable doubt as to the reliability of the prosecution's case either through direct examination or impeachment.'" (Holmes, 135 Ill.2d at 213, 142 Ill.Dec. 172, 552 N.E.2d 763.) This burden has been likened to a harmless error standard. Holmes, 135 Ill.2d at 208,142 Ill.Dec. 172, 552 N.E.2d 763.
Although defendant has claimed that the informant did encourage him and supplied him with drugs, his uncorroborated version of the events standing alone is not sufficient to establish that the informant's testimony would be exculpatory. (See Holmes, 135 Ill.2d at 217-18, 142 Ill.Dec. 172, 552 N.E.2d 763; Wilkins, 252 Ill.App.3d at 650, 192 Ill. Dec. 207, 625 N.E.2d 167; Crose, 194 Ill. App.3d at 104, 141 Ill.Dec. 56, 550 N.E.2d 1102.) Here, the trial court specifically found that there was no indication of entrapment in spite of defendant's own testimony to the contrary. Backshis' testimony established that it was Abston who set the prices of the drugs, picked the locations and selected the times for the meeting. In light of the trial court's rejection of Abston's claim of entrapment based on its determination of the witness' credibility, we cannot say that the informant's testimony would have tended to be exculpatory or created a reasonable doubt as to the reliability of the prosecution's case. See Holmes, 135 Ill.2d at 217-18, 142 Ill.Dec. 172, 552 N.E.2d 763; Wilkins, 252 Ill.App.3d at 650, 192 Ill.Dec. 207, 625 N.E.2d 167 (defendant raising entrapment defense failed to demonstrate the relevancy of the informant's testimony where there was no evidence presented *709 that informant participated in the crime or was present near the crime scene when defendant was arrested); People v. Jarrett (1965), 57 Ill.App.2d 169, 206 N.E.2d 835; see also Williams v. Brown (5th Cir. 1980), 609 F.2d 216.
We next turn to Abston's allegations of error with respect to the trial court's imposition of a 17-year consecutive sentence. Abston first challenges the validity of the consecutive sentence on the grounds that the trial court failed to adequately state the basis for the imposition of the consecutive sentence in the record. Alternatively, Abston argues that even if the trial court's articulated basis was sufficient, it was an abuse of discretion to impose consecutive sentences in light of the substantial evidence of mitigation offered in this case.
Section 5-8-4 of the Unified Code of Corrections provides in pertinent part:
"When multiple sentences of imprisonment are imposed on a defendant at the same time, * * * the sentences shall run concurrently or consecutively as determined by the court.
* * * * * *
(b) The court shall not impose a consecutive sentence * * * unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill.Rev.Stat.1989, ch. 38, par. 1005-8-4(a), (b).
We initially note that this issue regarding the failure of the trial court to articulate the basis for its imposition of a consecutive sentence has been waived. In People v. Hicks (1984), 101 Ill.2d 366, 78 Ill.Dec. 354, 462 N.E.2d 473, our supreme court determined that the requirement that the basis of the consecutive sentence be set forth in the record was permissive rather than mandatory and that this requirement was waived if defendant failed to request a specific finding. (Hicks, 101 Ill.2d at 374, 78 Ill.Dec. 354, 462 N.E.2d 473.) At the sentencing hearing below, Abston did not object to the imposition of a consecutive sentence and as stated in Hicks, "did not request a specific finding of the sentencing court relative to the protection of the public, nor did the defendant complain that a basis for the required statutory finding was not sufficiently articulated." (Hicks, 101 Ill.2d at 374, 78 Ill.Dec. 354, 462 N.E.2d 473.) Accord People v. Suarez (1991), 238 Ill.App.3d 110, 180 Ill.Dec. 160, 606 N.E.2d 1237; People v. Woods (1985), 131 Ill.App.3d 51, 86 Ill.Dec. 375, 475 N.E.2d 589; People v. Soloman (1983), 116 Ill. App.3d 481, 71 Ill.Dec. 799, 451 N.E.2d 953.
Moreover, even where an articulable basis is required, a "statement mirroring the words of the statute is not a prerequisite to upholding the imposition of a consecutive sentence." (People v. Abraham (1st Dist. 1993), 257 Ill.App.3d 587, 600, 195 Ill.Dec. 840, 629 N.E.3d 148; People v. Mays (1992), 230 Ill.App.3d 748, 172 Ill.Dec. 418, 595 N.E.2d 1088; People v. Miller (1983), 115 Ill.App.3d 592, 71 Ill.Dec. 79, 450 N.E.2d 767; People v. Reisinger (1982), 106 Ill.App.3d 148, 62 Ill.Dec. 62, 435 N.E.2d 860.) Rather, "[w]hat is required is that the record show that the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public." People v. Pittman (1982), 93 Ill.2d 169, 178, 66 Ill.Dec. 275, 442 N.E.2d 836.
The record demonstrates that the trial court believed that the imposition of consecutive sentences was necessary for the protection of the public. The trial court expressly considered Abston's prior criminal history and the circumstances of the crime. In so doing, the court emphasized that Abston had been convicted of a "serious crime" and that there was a large amount of drugs involved.
On point is People v. Miller (1983), 115 Ill.App.3d 592, 606, 71 Ill.Dec. 79, 450 N.E.2d 767. There, the appellate court affirmed the trial court's imposition of a consecutive sentence even though the trial court failed to make an express finding that the defendant posed a danger to the public. The Miller court found that the trial court's comment that the offense of delivery of narcotics is "one of the worst offenses that a person can commit" coupled with the trial court's comment *710 on defendant's criminal background provided an adequate basis upon which to base consecutive sentences. (Miller, 115 Ill. App.3d at 606, 71 Ill.Dec. 79, 450 N.E.2d 767.) The comments made by the trial court in this case are not dissimilar in kind from those held sufficient by the court in Miller and would, as in Miller, provide an adequate basis in the record to support the imposition of a consecutive sentence. Miller, 115 Ill. App.3d at 606, 71 Ill.Dec. 79, 450 N.E.2d 767; see also People v. Douglas (1991), 208 Ill. App.3d 664, 676, 153 Ill.Dec. 586, 567 N.E.2d 544 (trial court's comments on defendant's criminal history, as well as references to the "facts" and "circumstances" and "gravity" of offense sufficient to support imposition of consecutive sentences even without express statement that defendant posed a threat to the public); Woods, 131 Ill.App.3d at 54, 86 Ill.Dec. 375, 475 N.E.2d 589.
We also reject defendant's contention that the imposition of a consecutive sentence was an abuse of discretion in this case. In reviewing the defendant's sentence, we are mindful that a trial court is in a superior position to assess and weigh the relevant factors and considerations and, as such, its decision is entitled to great deference. (People v. La Pointe (1982), 88 Ill.2d 482, 59 Ill.Dec. 59, 431 N.E.2d 344; People v. Lambrechts (1977), 69 Ill.2d 544, 14 Ill.Dec. 445, 372 N.E.2d 641; People v. Perruquet (1977), 68 Ill.2d 149, 11 Ill.Dec. 274, 368 N.E.2d 882.) In imposing sentence, the trial court may consider a myriad of factors including "defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age," as well as the "particular circumstances of each individual case." (Perruquet, 68 Ill.2d at 154, 11 Ill. Dec. 274, 368 N.E.2d 882; People v. Requena (1982), 105 Ill.App.3d 831, 61 Ill.Dec. 636, 435 N.E.2d 125.) A reviewing court will not substitute its judgment for that of the trial court (People v. Cox (1980), 82 Ill.2d 268, 45 Ill.Dec. 190, 412 N.E.2d 541), particularly where the sentence in question is well within the statutory limits. Lambrechts, 69 Ill.2d at 559, 14 Ill.Dec. 445, 372 N.E.2d 641.
We note at the outset of our discussion that although Abston's 17-year sentence was consecutive, that sentence was only two years more than the minimum sentence available for the crime. Even if the time of the longest of the two concurrent sentences (6 years) were added to the 17-year sentence, the total time of 23 years would still be well within the bottom fifth of the range (15 to 60 years) of sentences for which Abston was eligible. See People v. Garcia (1991), 217 Ill.App.3d 350, 160 Ill.Dec. 307, 577 N.E.2d 183 (no abuse of discretion found where trial court sentenced defendant to one year more than the minimum within the 32-year statutory period); People v. McCon (1989), 191 Ill.App.3d 207, 138 Ill.Dec. 565, 547 N.E.2d 732.
The trial court's sentencing decision is supported by several factors. First, Abston had a criminal record, including a conviction for the possession of drugs less than two years before he committed the offenses that led to these charges. (See Lambrechts, 69 Ill.2d at 560, 14 Ill.Dec. 445, 372 N.E.2d 641.) Second, Abston was convicted of delivering a large amount (1001 grams) of highly pure (93%) cocaine. This relatively large amount with a high degree of purity could properly be considered by the trial court in its assessment of the severity of the offense and the harm or threat of harm caused by the offense. See Garcia, 217 Ill.App.3d at 352, 160 Ill.Dec. 307, 577 N.E.2d 183; McCon, 191 Ill.App.3d at 211, 138 Ill.Dec. 565, 547 N.E.2d 732.
Abston contends that the trial court could not consider the amount of cocaine delivered as a factor in sentencing him because that factor is one inherent in the offense. (See, e.g., People v. Saldivar (1986), 113 Ill.2d 256, 100 Ill.Dec. 776, 497 N.E.2d 1138.) In this respect, Abston, citing to the sentencing ranges established for the possession of various amounts of drugs, contends that the legislature had already considered the volume of the drug delivered in determining the proper range of penalties. (See Ill.Rev.Stat.1989, ch. 56½, par. 1401.2.) We disagree.
On point is People v. Garcia (1991), 217 Ill.App.3d 350, 160 Ill.Dec. 307, 577 N.E.2d 183. There, the appellate court rejected the *711 defendant's contention that it was improper for the trial court to consider the amount of cocaine involved in sentencing defendant on an unlawful delivery of a controlled substance charge. The Garcia court concluded that the trial "court could properly rely in aggravation upon the fact that the offense involved an amount of cocaine greater than the minimum amount covered by the statute." Garcia, 217 Ill.App.3d at 352, 160 Ill. Dec. 307, 577 N.E.2d 183; see also McCon, 191 Ill.App.3d at 210-11, 138 Ill.Dec. 565, 547 N.E.2d 732 (holding that trial court could properly consider the nature and quantity of the drug possessed in aggravation when sentencing defendant convicted of possession of PCP).
We recognize that the legislature has established stepped up sentencing ranges corresponding to increased volume ranges. (See Ill.Rev.Stat.1989, ch. 56½, par. 1401.2.) The range within which the amount delivered falls does determine the corresponding sentencing range, however, the precise place within the volume range over its minimum level is not an element of the offense. (Garcia, 217 Ill.App.3d at 352, 160 Ill.Dec. 307, 577 N.E.2d 183; McCon, 191 Ill.App.3d at 210-11, 138 Ill.Dec. 565, 547 N.E.2d 732.) The rejection of this position would, in effect, improvidently equate the delivery of an amount of drugs at the minimum of a sentencing range with the delivery of an amount of drugs at the maximum of that same range, and would thereby erode the necessary flexibility in sentencing. See Saldivar, 113 Ill.2d at 269, 100 Ill.Dec. 776, 497 N.E.2d 1138 ("Sound public policy demands that a defendant's sentence be varied in accordance with the particular circumstances of the criminal offense committed. * * * [T]he commission of any offense regardless of whether the offense itself deals with harm, can have varying degrees of harm or threatened harm. The legislature clearly and unequivocally intended that this varying quantum of harm may constitute an aggravating factor."); see also People v. Smith (2nd Dist.1994), 258 Ill.App.3d 261, 196 Ill.Dec. 450, 630 N.E.2d 147; People v. Killings (1986), 150 Ill.App.3d 900, 103 Ill.Dec. 825, 501 N.E.2d 1363 (although trial court cannot consider fact that the victim died as an aggravating factor, it can consider the amount of force and the physical manner in which death was caused as proper aggravating factors).
We cannot say that the sentence imposed did not fall within the latitude of the trial court's discretion considering among other things Abston's prior record, the circumstances of the offense, and the fact that even with the sentences running consecutively the sentence was well within the lower range of that permitted under the sentencing statute. See People v. Rogers (1986), 141 Ill.App.3d 374, 95 Ill.Dec. 660, 490 N.E.2d 133 (rehabilitation does not outweigh other considerations which suggest a more severe sentence); Douglas, 208 Ill.App.3d at 676-77, 153 Ill. Dec. 586, 567 N.E.2d 544.
We noticed in our review of the record that the mittimus in this case provides that Abston would receive "credit [for] all time served while in custody," but it fails to indicate the amount of time Abston was in custody prior to the imposition of the sentence. Although the specific amount of time could probably be computed by the Department of Corrections (People v. Johnson (1974), 23 Ill.App.3d 886, 321 N.E.2d 38), it is generally the practice of this court to remand the matter back to the trial court to perform that function so that the mittimus would provide the exact amount of time for which credit is to be given. See, e.g., People v. Jones (1992), 236 Ill.App.3d 244, 177 Ill.Dec. 549, 603 N.E.2d 619; People v. Phillips (1992), 228 Ill.App.3d 935, 171 Ill.Dec. 132, 593 N.E.2d 952; People v. Rinaldi (1989), 179 Ill.App.3d 539, 128 Ill.Dec. 333, 534 N.E.2d 515.
For the foregoing reasons the judgment of the circuit court is affirmed and this cause is remanded for the sole purpose of correcting the mittimus to specify the credit to be given defendant for all time served.
JUDGMENT AFFIRMED AND REMANDED
MURRAY, P.J., and McNULTY, J., concur.